## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:

West Roosevelt Road Corp.

      Alleged Debtor.

Chapter 7

Bankruptcy No. 15-21977

Judge Timothy A. Barnes

Date: August 26, 2015
Time: 10:30 a.m

## <u>Notice of Motion</u>

      **Please take notice** that, on **August 26, 2015, at 10:30 a.m.**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Timothy Barnes, in Courtroom 613 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there shall present the attached **MOTION TO DISMISS INVOLUNTARY CHAPTER 7 PETITION PURSUANT TO BANKRUPTCY RULES 1011 AND 7012 AND FOR JUDGMENT AGAINST PETITIONING CREDITOR PURSUANT TO 11 U.S.C.§303(i),** a copy of which is attached hereto and served upon you, at which time and place you may appear.

**August 24, 2015**

**West Roosevelt Road Corp.**

By: <u>/s/ William J. Factor</u>
One of Its Attorneys

William J. Factor (6205675))
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:   (847) 574-8233

{00040125}

## CERTIFICATE OF SERVICE

I, William J. Factor, an attorney, hereby certify that on August 24, 2015, I caused a copy of the foregoing *Notice of Motion* and the accompanying *Motion* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below.

/s/ William J. Factor

## Service List

**Registrants**
(Service via ECF)

Richard H Fimoff      rfimoff@rsplaw.com, fb@rsplaw.com
Patrick S Layng      USTPRegion11.ES.ECF@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re:

West Roosevelt Road Corp.

     Alleged Debtor.

Chapter 7

Bankruptcy No. 15-21977

Judge Timothy A. Barnes

Date: August 26, 2015
Time: 10:30 a.m

**MOTION TO DISMISS INVOLUNTARY CHAPTER 7 PETITION PURSUANT
TO BANKRUPTCY RULES 1011 AND 7012 AND FOR JUDGMENT
AGAINST PETITIONING CREDITOR PURSUANT TO 11 U.S.C.§303(i)**

John D. Crededio Sr., Chicago Studio Real Estate Holdings, LLC, Chicago

Studio Rentals, Inc. Delores Crededio, and West Roosevelt Road Corporation (the

"**Alleged Debtors**"),[1] as applicable, request pursuant to Fed. R. Bank. P.

7012(b)(1), (2), (3) (4), 5) and (6) and 7012(c), the entry of an Order dismissing the

captioned involuntary proceeding filed under chapter 7 of title 11, United States

Code (11 U.S.C. § 101, et. seq., the "Bankruptcy Code") and awarding sanctions

against ABC Bank (the "**Lone Petitioner**") the single petitioning creditor under

Section 303(i) of the Bankruptcy Code.[2]

---

[1] John D. Crededio, Sr. is the alleged debtor in case 15-22135; Delores Crededio is the alleged debtor in case 15-22140; West Roosevelt Road Corp. is the alleged debtor in case 15-21977; Chicago Studio Rentals, Inc. is the debtor in case 15-21974 and Chicago Studio Real Estate Holdings, LLC is the alleged debtor in case 15-21966.

[2] Bankruptcy Rule 1011 governs responsive pleadings in involuntary cases. It directs that defenses and objections to an involuntary petition are to be presented in the manner prescribed by Rule 12.  Rule 12(b) provides a court may dismiss an action for various reasons, including that the court does not have jurisdiction over the person (12(b)(2)); service was defective (12(b)(3) and (4)); a party has failed to state a claim for which relief may be granted (12(b)(6)); a party does not have

## I.    Background information that is relevant to present motion.

John D. Crededio, Sr. is the owner of Chicago Studio Real Estate Holdings,

LLC, Chicago Studio Rentals, Inc. and was the owner of West Roosevelt Road Corp.

before it was dissolved (the "**Commercial Entities**"). Delores Crededio has been

married to John for 49 years.

Since 1979, Mr. Crededio either in his own name or through corporate

vehicles, operated film and television production studios that provided facilities and

equipment in Chicago, Illinois for producers of films, television programs and

commercials. The studio is located at 5630 and 5660 West Taylor Street, Chicago

and collectively has a value of more than $6,500,000.  (*See* Declaration of John D.

Crededio, Sr. in Support of Motions to Dismiss Involuntary Proceedings, a copy of

which is attached hereto and incorporated herein (the "Dec.") at ¶1).  Chicago

Studio Rentals owns the equipment that television and movie studios and others

use to film indoor scenes.  That equipment is worth approximately $1.9 million. *Id.*

at ¶ 3.  The Lone Petitioner alleges that West Roosevelt Road Corp. owes

approximately $5,300,000.  The corporate charter for West Roosevelt Road Corp.

has been dissolved.  The alleged debt owed by West Roosevelt Road Corp. is secured

by the real estate on West Taylor Street. *Id.*

John Crededio and Delores Crededio also own a home in Harvard, Illinois,

which is worth approximately $1.5 million and is subject to a mortgage of about

---

standing to bring the action (12(b)(1)).  Similarly, Rule 12(c) permits a court to grant
judgment on the pleadings.

$1,100,000. *Id.* at ¶ 4. Delores has no involvement in the operation of the Commercial Entities and is only obligated to the Lone Petitioner for the approximately $1,100,000 loan secured by a mortgage on the Harvard Property. *Id.* The Lone Petitioner's election to file an involuntary case against Mrs. Crededio helps establish that each of the involuntary petitions against the Alleged Debtors (the "Petitions") were filed with malice and in bad faith.

For many years the Commercial Entities successfully competed in the Chicago film production market, receiving repeat business from Hollywood studios and other Chicago-oriented producers for dozens of productions. However, commencing in our about 2010, the Illinois Film Department started to steer film and television producers to a new facility in Chicago, promising them Illinois tax credits and potentially other benefits.[3] The State of Illinois' Department of Commerce and Economic Opportunity also provided this competitor with grant financing of up to $27.3 million.

As a result of the anti-competitive actions of the Illinois Film Board and the Department of Commerce and Economic Opportunity, among others, the Commercial Entities' business suffered, thereby leading the Commercial Entities to default on the loans to the Lone Petitioner. The Lone Petitioner *has not* tried to enforce its remedies through traditional channels such as State Court. Instead, it

---

[3] As a result of that conduct, Chicago Studio Rental Inc. and Chicago Studio Real Estate Holdings, LLC filed suit against the Illinois Department of Commerce and Economic Opportunity and others in the United States District Court for the Northern District of Illinois. *See* Case No. 15-cv-04099.

has gambled that it can bypass such remedies, and the protections afforded debtors

in such venues, and try to push the Alleged Debtors into a chapter 7 proceeding.

The Lone Petitioner has gambled wrong.

## II.   An involuntary petition is an extreme remedy that requires precise adherence to specific criteria.

The Seventh Circuit acknowledges "the filing of an involuntary petition is an

extreme remedy with serious consequences to the alleged debtor, such as loss of

credit standing, inability to transfer assets and carry on business affairs, and public

embarrassment." *In re Reid*, 773 F.2d 945, 946 (7th Cir.1985).  *see also In re*

*Meltzer*, 516 B.R. 504, 515 (Bankr. N.D. Ill. 2014).  "Because of these possible

effects, filing an involuntary petition 'should be a measure of last resort.'"  *Meltzer,*

516 B.R. at 515 (quoting *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th

Cir. 2001)).

Indeed, courts routinely penalize creditors that push an entity into

bankruptcy without a basis for doing so. As explained below, the Lone Petitioner

has pushed five entities into bankruptcy without any justification and with a

callous disregard of Section 303 of the Bankruptcy Code. It should be sanctioned for

doing so.

## III.   The Court should dismiss the petitions because the court lacks jurisdiction over the alleged debtors due to improper service.

The first defect requiring dismissal of the Petitions involves the failure to

serve the Petitions on each of the Alleged Debtors (other than John Crededio) and

improper service on John Crededio.  Because of this, Rules 12(b)(2), (b)(4) and

(b)(5)[4] and Bankruptcy Rule 1010 collectively require dismissal of the Petitions against each of the Alleged Debtors.

Here, the Lone Petitioner never even bothered to serve a copy of the Petitions against Chicago Studio Rentals, Chicago City Real Estate Holdings, West Roosevelt Road and Delores Crededio.  Fed R. Bank. P. 1010.[5]  Furthermore, the Petition served on John Crededio was mailed substantially after the 15 day limit for issuance of a summons. Dec. at ¶¶ 5-6.

These are fatal problems because "[v]alid service of process is a prerequisite to a court's assertion of personal jurisdiction over a defendant." *O'Connell v. Three Park Ave. Bldg. Co., L.P. (In re Blutrich Herman & Miller)*, 227 B.R. 53, 57 (Bankr. S.D.N.Y. 1998) (dismissing involuntary that was not properly served).  Because a court does not have personal jurisdiction over a defendant that has not been served properly, a claim against such a defendant must be dismissed under FRCP 12(b)(2).

---

[4] Rule 12(b) provides that "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1)  lack of subject-matter jurisdiction; (2)  lack of personal jurisdiction; (3)  improper venue; (4)  insufficient process; (5)  insufficient service of process; (6)  failure to state a claim upon which relief can be granted; and (7)  failure to join a party under Rule 19.

[5] Rule 1010 states that: (a) Service of involuntary petition and summons; service of petition for recognition of foreign nonmain proceeding. On the filing of an involuntary petition or a petition for recognition of a foreign nonmain proceeding, the clerk shall forthwith issue a summons for service. When an involuntary petition is filed, service shall be made on the debtor. … The summons shall be served with a copy of the petition in the manner provided for service of a summons and complaint by Rule 7004(a) or (b). If service cannot be so made, the court may order that the summons and petition be served by mailing copies to the party's last known address, and by at least one publication in a manner and form directed by the court. The summons and petition may be served on the party anywhere. Rule 7004(e) and Rule 4(l) F.R.Civ.P. apply when service is made or attempted under this rule.

*See In re Diloreto*, 2008 Bankr. LEXIS 140, *12 (Bankr. E.D. Pa. Jan. 11, 2008)

(dismissing involuntary petition for lack of personal jurisdiction where "the

petitioning creditor here did not comply with the service requirements of Rule 7004

when Federal Express delivered the involuntary petition to the putative debtor").[6]

Accordingly, this action must be dismissed as to Chicago City Real Estate

Holdings, Chicago Studio Rentals, West Roosevelt Road Corp., John Crededio and

Delores Crededio for lack of personal jurisdiction.

**IV.    The Court should dismiss the Petitions because the Lone Petitioner is not an eligible petitioner and because the Alleged Debtors have more than 12 creditors.**

**A.    An involuntary bankruptcy petition requires 3 creditors holding unsecured claims in excess of $15,325, which are not subject to a bona fide dispute as to liability and amount.**

A single creditor that puts a debtor into bankruptcy has the burden of

establishing that (a) its claim is not contingent as to liability or subject to a bona

fide dispute as to liability or amount; (b) the petitioning claimholder is

undersecured by at least $15,325; (c) there are fewer than twelve claimholders; and

(d) the alleged debtor is generally not paying its debts as they come due, unless such

debts are the subject of a bona fide dispute as to liability or amount. *See In re Amc*

*Investors, LLC*, 406 B.R. 478, 483 (Bankr. D. Del. 2009).

"[F]or the past one hundred years, U.S. bankruptcy statutes have required

creditors filing involuntary petitions to hold unsecured debt." *In re Allen-Main*

---

6 The dockets for each of these cases, including the case for John Crededio, do not reflect that the Lone Petitioner filed a proof of service.

*Assocs., Ltd. Pshp.*, 218 B.R. 278, 280 (Bankr. D. Conn. 1998) (dismissing petition because secured creditor held non-recourse debt and not an unsecured claim).  That is why Section 303(b) requires petitioning creditors to have aggregate unsecured debt of greater than $15,325.  This applies irrespective of whether the putative debtors have less than 12 creditors.

Section 303(b) also provides that a creditor holding a claim that is contingent as to liability or the subject of a bona fide dispute as to liability or amount is not eligible to file an involuntary petition. 11 U.S.C. § 303(b).  "Under this standard, the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987).  "The statute does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary."  *Id.*

The BAPCPA amendments also changed the law in 2005, by specifying that a creditor holding a debt that is subject to a bona fide dispute as to amount also is not eligible to file an involuntary petition, even if liability is uncontested.  *See In re Honolulu Affordable Hous. Partners, LLC*, 2015 Bankr. LEXIS 1558, 1 (Bankr. D. Haw. May 7, 2015).[7]  Based upon the change in law, the *Honolulu Affordable*

---

[7] *See e.g., Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 947 (6th Cir. 2007) (Congress made clear that it intended to disqualify creditors when any legitimate basis, factual or legal, existed for debtor not to pay claim); *In re Vicor Techs.*, 2013 Bankr. LEXIS 1416 (Bankr. S.D. Fla. Apr. 5, 2013); *Regional Anesthesia Assocs. PC v. PHN Physician Servs. (In re Regional Anesthesia Assocs. PC)*, 360 B.R. 466, 470 (Bankr. W.D. Pa. 2007) (under the 2005 amendments, any dispute regarding amount when dispute arises from same transaction and is directly related to underlying claim makes claim subject to bona fide dispute); *In re Euro-American Lodging Corp.*, 357 B.R. 700 (Bankr. S.D.N.Y. 2007) (as result of amendment, any

*Housing* court further concluded that any dispute about the amount of claim

disqualifies it from consideration:

> The amount in controversy may be only a hundred dollars or so. This is very small, both in absolute terms and in comparison with FGD's total claim. But section 303 makes clear that any bona fide dispute about the amount of the claim, regardless of its size, disqualifies the creditor from filing a petition.

*Id.*

### B. Each of the Petitions should be dismissed because the Lone Petitioner is oversecured, there are bona fide disputes as to liability and or amount for the subject debts and four of the Alleged Debtors have more than 12 creditors.

Each Petition should be dismissed because the Lone Petitioner does not hold

eligible claims against any of them. Such claims are not unsecured, they are subject

to a bona fide dispute as to liability and or amount and four of the Alleged Debtors

have more than 12 creditors.

The following chart, which is based upon the information referenced in the

Dec., among other sources, sets forth each of the Alleged Debtors, the amount of the

alleged claim the Lone Petitioner asserted in the subject Petition, the value of the

collateral securing the alleged debts, whether there is a bona fide dispute as to the

amount of the alleged debt and the number of creditors with claims against each of

the Alleged Debtors.

---

dispute regarding amount that arises from same transaction and is directly related to underlying claim should render claim subject to bona fide dispute) (dictum); *In re Orlinsky*, 2007 Bankr. LEXIS 1520 (Bankr. S.D. Fla. Apr. 24, 2007) (creditors holding partially disputed claims hold claims subject to bona fide dispute as to liability or amount and therefore do not count for purposes of determining if debtor has 12 or more creditors); *In re Tobacco Road Assocs., LP*, 2007 U.S. Dist. LEXIS 22990 (E.D. Pa. Mar. 30, 2007) (dispute as to amount is sufficient to disqualify petitioning creditor) (dictum).

| Case No. | Debtor | Amount Alleged | Value of collateral[8] | Validity of Debt | No of Creditors |
|---|---|---|---|---|---|
| 15-21977 | West Roosevelt Road Corp. | $5,294,826.69 | $6,500,000.00 | May be bona dispute as to amount of debt | |
| 15-21966 | Chicago Studio City Real Estate Holdings, LLC | $528,668.52 | Disputed Claim | Bona fide dispute as to liability and amount | 14 |
| 15-22135 | John D. Crededio | $6,679,010.62 | $10,600,000.00 | May be bona dispute as to amount of debt | 28 |
| 15-22140 | Dolores Crededio | $1,146,490.74 | $1,500,000.00 | May be bona dispute as to amount of debt | 20 |
| 15-21974 | Chicago Studio Rentals, Inc. | $1,183,277.33 | $1,900,000.00 | May be bona dispute as to amount of debt | 21 |

1.   **The claims asserted by the Lone Petitioner against John Crededio, Delores Crededio, Chicago Studio Rentals and West Roosevelt Road Corp. are not unsecured.**

Based upon the calculations in the foregoing chart, West Roosevelt Road

Corp., a dissolved corporation, allegedly owes the Lone Petitioner approximately

$5,300,000. That alleged debt, however, is secured by mortgages on real estate

---

[8] See Dec. at ¶¶1-4. A chart depicting the subject property and its value is as follows:

| Property Description | Estimated value |
|---|---|
| Real Estate at 5660 and 5630 West Taylor, Chicago | $6,500,000.00 |
| Real Estate at 1836 South 60th Street, Chicago | $200,000.00 |
| Real Estate at 117000 Streit, Harvard, Illinois 60033 | $1,500,000.00 |
| Studio Equipment | $1,900,000.00 |
| | **$10,100,000.00** |

parcels located at 5630 West Taylor and 5660 West Taylor that are worth approximately $6,500,000. Dec. at ¶¶1-4. Thus, the Petition filed against the West Roosevelt Road Corp. should be dismissed because the Lone Creditor does not hold unsecured debt of at least $15,325 against West Roosevelt Road.

Similarly, the above calculations show John D. Crededio, Sr., allegedly owes the Lone Petitioner approximately $6,700,000, which amount is secured by the Taylor Street properties worth approximately $6,500,000, personal property owned by Chicago Studio Rentals, Inc. worth approximately $1,900,000 and a house worth approximately $1,500,000, as well as another house worth approximately $200,000. *Id*. Thus, the Petition filed against John D. Crededio also should be dismissed because the Lone Creditor is not the holder of unsecured debt of at least $15,325.

Next, Delores Crededio allegedly owes the Lone Petitioner approximarely $1,100,000, which is secured by a mortgage on a house worth approximately $1,500,000. The Petition against Mrs. Crededio also should be dismissed because the Lone Creditor does not hold unsecured debt of at least $15,325. *Id*.

Finally, the Petition against Chicago Studio Rental should be dismissed because the Lone Petitioner alleges it is owed approximately $1.4 million by this Alleged Debtor and the personal property Chicago Studio Rental owns is worth approximately $1.9 million. *Id*.

**2.    There are bona fide disputes as to liability and or amounts with respect to the subject claims.**

The Petition filed against Chicago Studio City Real Estate Holdings, LLC

also should be dismissed because the alleged claim asserted by the Lone Petitioner

for $528,668.52 is subject to a bona fide dispute as to liability and amount. Chicago

Studio Real Estate Holdings LLC believes its only liability to the Lone Petitioner

arises from its guaranty of the loan on a house in Cicero.  The amount of that loan is

approximately $120,000, and not $528,668.  *Id.* at 8.  Indeed, in June of this year,

the Lone Petitioner provided a payoff statement to John Crededio for each of the

alleges loans and none of the amounts referenced on the payoff statement reflected

a balance owed in the amount alleged by Chicago Studio City Real Estate Holdings,

LLC.

Furthermore, each of the Alleged Debtors questions the precise amounts

asserted by the Lone Petitioner.  *Id.* at 9.  Among other things, the Alleged Debtors

believe the subject debts include prepayment penalties that are not properly

assessed, which creates a bona fide dispute within the contemplation of Section 303.

*See In re Honolulu Affordable Hous. Partners, LLC*, 2015 Bankr. LEXIS 1558, 1

(Bankr. D. Haw. May 7, 2015).

> **3.    The Involuntary Petition should be dismissed because it was filed by a
> Lone Petitioner and each of the Alleged Debtors has more than 12
> creditors.**

Section 303 expressly requires that 3 creditors sign an involuntary petition

when, as in this instance, the alleged debtor has more than 12 creditors. Quite

simply, this statute bars a single creditor from placing a debtor into bankruptcy

when the debtor has more than 12 creditors.  This "requirement is not a

meaningless formality that a creditor may ignore until after filing the petition."

*Basin Electric Power Cooperative v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th.

Cir. 1985).

The above chart shows that John Crededio, Delores Crededio, Chicago Studio Rentals and Chicago City Studio Real Estate Holdings LLC each have more than 12 creditors. Dec. at ¶ 5. This is another fatal defect in the Petitions filed against these entities.

And although courts sometimes allow a single creditor to find additional creditors to join in the petition, that right is sparingly given and is frequently denied when, as here, the creditor knew or should have known that a single creditor could not file or the petition otherwise was filed in bad faith. It has been generally held that an involuntary bankruptcy petition is filed in bad faith whenever the petitioning creditor knew or should have known that the alleged debtor had 12 or more creditors at the time of filing. *Downers Grove Nat'l Bank v. Fox (In re Fox)*, 1994 U.S. Dist. LEXIS 12471, *18-19 (N.D. Ill. Sept. 1, 1994). *See also Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 (4th Cir. 1993); In re Crown Sportswear, Inc., 575 F.2d 991, 993 (1st Cir. 1978). Allowing a single creditor to circumvent the 3 creditor rule in the hope that it can then find additional creditors renders this protection in section 303 substantially meaningless.

The Lone Petitioner also is not a stranger to the Alleged Debtors or their business operations and knew, or should have known, that the Alleged Debtors had a substantial number of creditors. The Lone Petitioner has done business with the Alleged Debtors for more than 20 years. The Lone Petitioner also knows from

extensive discussions with the Alleged Debtors, that their business operations

declined in or about 2010, because a competing studio facility opened in Chicago

with the backing of the Illinois Department of Commerce and Economic

Opportunity and the Illinois Film Office started directing business to that facility

through the use of various incentives.  Thus, the Lone Petitioner knew the Alleged

Debtors were having financial difficulties and, as such, would have more than 12

creditors.  Despite this knowledge, the Lone Petitioner ignored the requirements of

Section 303, presumably hoping it was better to ask forgiveness from the Court,

rather than permission from other creditors.  Such conduct should not be tolerated,

however, because it makes a mockery of Section 303(i).

## V.   Sanctions are warranted due to the Lone Creditor's intentional disregard of Section 303 and its malicious use of an extreme remedy.

Section 303(i) of the Bankruptcy Code provides that

> If the court dismisses a petition under this section other than on consent of
> all petitioners and the debtor, and if the debtor does not waive the right to
> judgment under this subsection, the court may grant judgment-- (1)  against
> the petitioners and in favor of the debtor for-- (A)  costs; or (B)  a reasonable
> attorney's fee; or (2)  against any petitioner that filed the petition in bad
> faith, for--(A)  any damages proximately caused by such filing; or (B)
> punitive damages.

11 USCS § 303.

If the involuntary petition is dismissed, the petitioning creditors will be

responsible for paying the attorney's fees incurred by the debtor to challenge the

petition, absent unusual circumstances.  *Wechsler v. Macke Int'l Trade, Inc. (In re*

*Macke Int'l Trade, Inc.),* 370 B.R. 236, 249 (B.A.P. 9th Cir. 2007).  Thus, "any

petitioning creditor in an involuntary case . . . should expect to pay the debtor's

attorney's fees and costs if the petition is dismissed." *In re MicroStructure Techs., Inc.*, 2009 Bankr. LEXIS 3744, *5 (Bankr. W.D. Wash. July 17, 2009); *Wechsler,* at 249 ("§ 303 (i) (1) raises a rebuttable presumption that reasonable fees and costs are authorized. … although the Code has liberalized standards for instituting involuntary cases, because of the potential adverse impact on the debtor and the need to encourage discretion in filing such cases, unsuccessful involuntary petitioners should routinely expect to pay the debtor's legal expenses arising from the involuntary filing.").

To the extent the Court dismisses the Petitions, damages consisting of attorneys' fees, actual damages and punitive damages are in order. This case is particularly egregious because the Lone Petitioner elected to utilize Section 303 with full knowledge that it could not do so and that its attempts to do so were improper. The Lone Petitioner opted to ignore the careful criteria for invoking bankruptcy jurisdiction and decided to plow ahead into a bankruptcy forum, instead of filing a foreclosure action in Illinois State court and using that type of process for what is a two-party dispute. That was not a wise choice in light of Congress' clear statement that such conduct is not to be tolerated and warrants, in circumstances like here, sanctions and punitive damages.

## VI.   Conclusion

The Lone Petitioner had no right to push the Alleged Debtors into bankruptcy and this Court should award attorneys' fees, compensatory damages and punitive damages for this overzealous conduct.

**August 24, 2015**

**Respectfully submitted,**

**West Roosevelt Road Corp.**

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor (6205675))
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:    (847) 574-8233

## DECLARATION OF JOHN D. CREDEDIO, SR.
## IN SUPPORT OF MOTIONS TO DISMISS INVOLUNTARY PROCEEDINGS

I am over 18 years of age and am competent to testify to the facts in this declaration. I have personal knowledge of all the facts stated below.

1.      I am the President/Owner of Chicago Studio Rental Inc., Chicago Studio City Real Estate Holdings, LLC and West Roosevelt Road Corp. and primarily in charge of these entities.  These entities own and operate film and television production studio facilities and provided equipment in Chicago, Illinois for producers of films, television programs and commercials. The facilities are located generally on the block of 5600 West Taylor Street, Chicago. The buildings are used for filming television shows and commercials, among other things.

2.      The buildings at 5660 West Taylor and 5630 are worth at least $6,500,000.  That is based upon my knowledge of the real estate market. Appraisals conducted by the Bank in 2014 show a value of approximately $550,000 for the parcel at 5630 West Taylor Street and a value of $5,370,000 for the parcel at 5660 West Taylor Street.  It is my belief that the aggregate appraised amount of $5,920,000 undervalues the property by at least $600,000.  I have extensive experience selling real estate in this area and believe the subject property would sell for at least $6,500,000, if not more.

3.      Chicago Studio Rentals owns the equipment that television and movie studios and others use to film indoor and outdoor scenes.  That equipment is worth approximately $1.9 million.  This value is based upon an appraisal commissioned on the personal property in 2014.

4.      I also own a home with my wife Delores in Harvard, Illinois.  That home is on the market for $1.5 million and is subject to a mortgage of about $1,100,000.  I have been married to Delores for 49 years.  I handle all of the financial matters for Delores.  Delores has no involvement whatsoever in the operation of the Commercial Debtors and is only obligated to the Bank for the approximately $1,100,000 mortgage on the Harvard,Illinois Property.  I believe

ABC Bank filed an involuntary petition against my wife solely to pressure me.

5.      The attached document lists the entities that are owed money or will be owed money by me, my wife, Chicago Studio Rentals, Chicago Studio City Real Estate Holdings, LLC and West Roosevelt Road Corp. I prepared this document and believe the information is true and correct.

6.      I received a copy of the summons and involuntary petition filed by ABC Bank in the mail at my house in Harvard, Illinois.  This was received on or about August 6, 2015.  I first learned about the case filed against me when my credit card purchase was rejected because a bankruptcy was pending against me.

7.      Chicago Studio Rentals, Chicago Studio City Real Estate Holdings LLC, West Roosevelt Road Corp. and Delores Crededio did not receive in the mail a summons or involuntary bankruptcy petition.

8.      I was not aware of any documents that Chicago Studio City Real Estate Holdings, LLC executed in favor of ABC Bank that would give rise to a claim in favor of the Bank.  The mortgage documents that were executed in respect to the Taylor Street real estate are between the Bank and West Roosevelt Road Corp.  To the extent Chicago Studio Real Estate Holdings, LLC. is a guarantor of a loan related to the Cicero house, I did not intend for that guaranty to be issued. Also, the loan on the Cicero house if approximately $120,000.

9.      I take issue with the amounts ABC Bank claims it is owed and the entities that owe such amounts. It is my understanding that the total amount owed of approximately $6.6 million includes some form of prepayment penalty. If so, that amount is disputed because the loans were not prepaid.


**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

{00040071}

Monday, August 24, 2015
Chicago, IL                                    **John Crededio, Sr.**

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| ABC Bank | disputed | unknown | unknown | unknown |
| D&P Construction Co.<br>8605 W Bryn Mawr Ave   Suite 301<br>Chicago il 60631 | $1,460.00 | $1,460.00 | $1,460.00 | |
| Robert Held<br>333 West Wacker Drive<br>Chicago Il 60606 | | $625,000.00 | $625,000.00 | |
| Peoples Gas<br>PO Box 19100<br>Green Bay, WI 54307 | | $19,324.45 | | |
| Commonwealth Edison<br>PO Box 6111<br>Carol Stream, IL 60197 | $4,398.00 | $4,398.00 | | |
| Flood Brothers<br>17W697 Butterfield Rd., Suite E<br>Oakbrook Ter., Illinois 60181 | $453.00 | | | |
| Verizon<br>PO Box 25505 | | | $600.00 | |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| Lehigh Valley, PA 18002 | | | | |
| Liberty Mutual  Insurance PO Box 2501 Keene NH 03431 | | | $7,130.00 | |
| Hertz Equipment P.O. Box 650280 Dallas TX 75265-0280 | | $7,298.00 | | |
| VW Credit  (JDC) PO Box 923748 Peachtree Corners Ga 30110-3748` | | | $2,272.66 | |
| Synchrony Financial PO Box 960061 Orlando Fl 32896 | | | $21,212.65 | |
| AMEX Box 0001 Los Angles  CA 90096 | $2,086.12 | | $2,086.12 | |
| Capitol One PO Box 6492 Carol Stream Il 60197 | $19,787.84 | | $19,787.84 | |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| Capital One - Mortgage PO Box 21887 Eagan, MN 55121 | | | $1,037,395.00 | $1,037,395.00 |
| ABW Financial Services LLC 9960 West 191 Street, St. A Mokena, IL 60448 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| State Farm Mutual Auto Insurance 2702 Ireland Grove Road Bloomington, IL 61709-0001 | | | $388.95 | $388.95 |
| State Farm Fire & Casualty 2702 Irelan Grove Road Bloomington, IL 61709 | | | $1,761.00 | $1,761.00 |
| ABW Development and Consulting 9960 West 191 Street, St. A Mokena, IL 60448 | $875.00 | $875.00 | $875.00 | $875.00 |
| Motion Picture Studio Mechanics - Local 476 6305 Northwest Highway Chicago, IL 60631 | | | | $62.00 |
| Internal Revenue Service PO Box 9002 | | | $39,928.32 | $39,928.32 |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| Holtsville, NY  11742 | | | | |
| McHenry County Treasurer 2100 North Seminary Avenue Woodstock, IL 60098 | | | $7,572.35 | $7,572.35 |
| Nick Vangle c/o Lee Manor Nursing Home 1301 Lee Street Des Plaines, IL  60018 | | | $10,000.00 | $10,000.00 |
| DKCondo 1040 North Lake Shore Drive Chicago, IL  60611 | | | $2,733.20 | $2,733.20 |
| Blue Cross PO Box 3004 Naperville, IL 60566-9747 | | | | $531.00 |
| Blue Cross Medicare RX PO Box 3897 Scranton, PA 18505 | | | | $48.90 |
| Chgo Ctr for Cosmetic Dentistry 205 West Main Street Barrington, IL  60010 | | | | $4,940.00 |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| Film Gear<br>333 N Western Ave<br>Chicago Il 60612 | $6,600.00 | $6,600.00 | | |
| Natinal Lift Truck<br>3333 Mt Propect Rd<br>Franklin Park Il 60131 | $7,800.98 | $7,800.98 | | |
| Cinelease<br>5375 W San Fernando Rd<br>Los Angeles CA 90039 | | $16,878.00 | | |
| Liberty Mutual<br>Po Box 2051<br>Keene NH 03431 | | $17,988.00 | | |
| Menards/Capital One<br>PO Box<br>Carol Stream Il 60197 | | | $2,262.00 | |
| Chase<br>Card Member Services<br>Po Box 15153<br>Wilminton DE 19866-5153 | | | $37,987.00 | $37,987.00 |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| Home Depot<br>Po Box 790345<br>St Louis Mo 63179 | | $6,789.00 | | |
| Chicago Tribune<br>435 N. Michigan Avenue<br>Chicago, IL 60611 | | | | $103.87 |
| PRC Inc.<br>890 N York Rd<br>Elmhurst Il 60126 | | $2,989.00 | | |
| Shell Gas<br>Po Box 183019<br>Columbus Oh 43218-3019 | $10,154.37 | | | |
| Lincoln Auto<br>Po Box 790093<br>St Louis Mo 63179 | | | $27,048.61 | |
| Film Makers<br>2558 W 16 Th Street<br>Chicago Il 60608 | | $1,437.43 | | |
| GE Capital | | $25,000.00 | | |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| 350 N Orleans  Suite 300 Chicago, IL  60654 | | | | |
| Ingstrup Paving 201 E Hill St Villa Park | $2,460.00 | $2,460.00 | | |
| Xtivivty Solutions 655 W Grand Ave Suite 300 Elmhurst  Il | | $9,600.00 | | |
| Intelligent Lighting 2461 E. Oakton Street Arlington Heights, IL 60005 | | $10,969.03 | | |
| Nordstroms Visa Card PO Box 6566 Englewood, CO  80155 | | | $4,572.24 | $4,572.24 |
| Com Ed PO Box 6111 Carol Stream, IL  60197-6111 | $1,004.23 | $4,689.00 $3,043.10 | $240.00 | |
| Cook County Treasurer 118 North Clark Street #112 Chicago, IL 60602 | | | $45,000.00 | $45,000.00 |

Creditor List for
John D. Crededio, Sr. (15-22135); Delores Crededio (15-22140); Chicago Studio Rentals, Inc.
(15-21974); and Chicago Studio Real Estate Holdings, LLC (15-21966)

| Amounts owed are approximate and subject to further adjustment and subject to dispute in some instances | Chicago Studio City Real Estate Holdings, LLC | Chicago Studio Rentals | John D. Crededio, Sr. | Delores Crededio |
|---|---|---|---|---|
| Marc Schwartz<br>c/o Harrison and Held<br>333 West Wacker Drive, Sut 1700<br>Chicago, IL 60606 | | | $5,000.00 | |
| Harrison And Held<br>333 West Wacker Drive, 1700<br>Chicago, IL 60606 | $30,000.00 | $30,000.00 | $30,000.00 | |
| Direct Tv | | | $240.00 | |
| Hicks Propane<br>1023 Lake Avenue<br>Woodstock, IL  60098 | | | $1,200.00 | $1,200.00 |
| Illinois Department of Revenue<br>PO Box 19035<br>Springfield, IL 62794 | | | | $13,374.72 |
| | 14 | 21 | 28 | 20 |